UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


BOYD GILMORE,

        Plaintiff,

v.                              Case No. 2:09-cv-01075

CORRECTIONAL MEDICAL SERVICES, INC.,
DR. ALLEN, CMS Regional Director,
MARY WESTFALL, Administrator, CMS,
DR. EBEN[EZER] OBENZA, Physician,
WEXFORD HEALTH SOURCES,
DR. RAY IGLECIA, Wexford Regional Director,
NAOMI ROBERTS, Wexford Administrator,
JAMES RUBENSTEIN, Commissioner,
West Virginia Division of Corrections,
CHARLENE SOTAK, Grievance Coordinator, and
DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

        Defendants.


PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court are the following motions: a Motion
to Dismiss filed by defendants Naomi Roberts and Wexford Health
Sources, Inc. (docket sheet document # 35), a Motion to Dismiss
filed by defendants Correctional Medical Services, Inc., Dr. Mark
Allen, and Mary Westfall (# 39), and a Motion to Dismiss filed by
defendants David Ballard, James Rubenstein and Charlene Sotak (#
44).  This matter is assigned to the Honorable John T. Copenhaver,
Jr., United States District Judge, and it is referred to the
undersigned United States Magistrate Judge for submission of

proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

Plaintiff filed his initial Complaint (# 1), with numerous exhibits, including his own affidavits concerning the conduct of each named defendant, on September 23, 2009, in the United States District Court for the Northern District of West Virginia.  That same day, Plaintiff filed a Motion for Leave of Court to Supplement Complaint (# 3).

On October 2, 2009, the United States District Court for the Northern District of West Virginia transferred the matter to this court because the allegations in the body of the initial Complaint largely concerned Plaintiff's medical treatment while incarcerated at the Mount Olive Correctional Complex, which is located within the jurisdiction of the United States District Court for the Southern District of West Virginia.

The allegations contained in the Supplement (# 3), however, concern Plaintiff's medical treatment after he was returned to custody at the St. Marys Correctional Center, which is located within the jurisdiction of the United States District Court for the Northern District of West Virginia.  Although the undersigned granted Plaintiff's Motion for Leave of Court to Supplement Complaint, and ordered service of process on all of the defendants, the Clerk's Office only issued summonses for the defendants named

2

in the initial Complaint document, who are subject to this court's jurisdiction. Consequently, none of the additional defendants named in the Supplement have been served with process, and they are not subject to this court's jurisdiction. The undersigned further notes that, in addition to naming new defendants who are employed at SMCC, the Supplement contains allegations concerning additional medical issues that are not the subject of the initial Complaint. Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge transfer the Supplemental Complaint to the United States District Court for the Northern District of West Virginia for further consideration by that court.

On January 4, 2010, defendants Wexford Health Sources, and Naomi Roberts filed a Motion to Dismiss (# 35) and a Memorandum in support thereof (# 36). On January 13, 2010, defendants Correctional Medical Services, Inc., Dr. Mark Allen and Mary Westfall (hereinafter collectively referred to as "the CMS Defendants") filed a Motion to Dismiss (# 39) and a Memorandum in support thereof (# 40). On February 8, 2010, defendants David Ballard, James Rubenstein and Charlene Sotak (hereinafter collectively referred to as "the DOC Defendants") filed a Motion to Dismiss (# 44) and a Memorandum in support thereof (# 45).

Plaintiff filed responses to each of the motions (## 38, 43 and 46). On February 22, 2010, the DOC Defendants filed a reply brief (# 47). The other defendants elected not to file replies.

3

These matters are ripe for determination.

## STANDARD OF REVIEW

Defendants have filed Motions to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007), the Supreme Court observed that a motion to dismiss should be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Id.

The Supreme Court further explained its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in
> *Twombly*.  First, the tenet that a court must accept as
> true all of the allegations contained in a complaint is
> inapplicable to legal conclusions.  Threadbare recitals
> of the elements of a cause of action, supported by mere
> conclusory statements, do not suffice. [*Twombly*, 550
> U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes
> of a motion to dismiss we must take all of the factual
> allegations in the complaint as true, we "are not bound
> to accept as true a legal conclusion couched as a factual
> allegation" (internal quotation marks omitted).  Rule 8
> . . . does not unlock the doors of discovery for a
> plaintiff armed with nothing more than conclusions.
> Second, only a complaint that states a plausible claim
> for relief survives a motion to dismiss. *Id.*, at 556. *
> * *

4

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

**ANALYSIS**

Deliberate indifference standard

In Farmer v. Brennan, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" Id., at 833.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." Id., at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

5

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id., at 837.

Plaintiff's Complaint alleges that the defendants have exhibited a deliberate indifference to Plaintiff's serious medical needs, in violation of his Eighth Amendment rights. "In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see also Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Munic. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990).

6

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. <u>See</u> <u>Benson v. Cady</u>, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. <u>See</u> <u>id.</u> Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. <u>See</u> <u>Estelle</u>, 429 U.S. at 106.

<u>Miltier</u>, 896 F.2d at 851-852.

The burden of demonstrating deliberate indifference to a serious medical need by correctional officials and health care providers is very high. It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. <u>See</u> <u>Farmer</u>, 511 U.S. at 832-35; <u>Sosebee v. Murphy</u>, 797 F.2d 182-83 (4th Cir. 1986); <u>Loe v. Armistead</u>, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

<u>Rush v. VanDevander</u>, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); <u>Banks v. Green Rock Correctional Center Medical Dept.</u>, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007). For example, in <u>Sosebee</u>, the Fourth Circuit found that if prison guards were aware that a steak bone had pierced an inmate's esophagus, causing infection that resulted in the inmate's death, and the guards had intentionally abstained from seeking medical help, such conduct <u>might</u> establish deliberate indifference to a serious medical need.

In <u>Webster v. Jones</u>, 554 F.2d 1285 (4th Cir. 1977), the plaintiff, who had complained numerous times of eye problems and loss of vision, claimed that he was cursorily examined after his

initial complaint, but never re-examined despite later complaints. The doctor claimed that he examined Webster several times, but never diagnosed a medical problem with his eye.  Id. at 1286. Subsequently, a specialist found that Webster's vision had deteriorated to 20/400 and that he suffered from a detached retina and iritis, and that his vision could not be restored.  Id.  The Fourth Circuit found that, even if the doctor had been negligent in failing to properly diagnose or treat Webster, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need and, thus, Webster's allegations did not constitute a cognizable constitutional claim.  See also, Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975).  As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate.  Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

Allegations in Plaintiff's Complaint

In his Complaint documents, Plaintiff has chiefly complained that the defendants have been deliberately indifferent to his serious medical needs concerning back and leg pain and urinary tract problems.  Plaintiff's Complaint alleges that, in April of 2007, while incarcerated at the St. Marys Correctional Center ("SMCC"), he had an MRI at St. Joseph's Hospital, and was diagnosed with herniated discs and a nerve root impingement.  (# 1 at 6 and Ex. 10).  Plaintiff alleges that he was placed on pain medication and was referred to PARS Neurological in Parkersburg, West Virginia.  (# 1 at 6).

Plaintiff was subsequently transferred to the Mount Olive Correctional Complex ("MOCC").  Between April of 2007 and April 30, 2008, Correctional Medical Services, Inc. (hereinafter "CMS") was the contracted medical provider for inmates at MOCC.  After arriving at MOCC, Plaintiff was transported to PARS Neurological where Dr. Houman Khosrovi reviewed his MRI films and recommended physical therapy, NSAIDS, mild narcotic analgesics, and injections at a pain clinic.  (Id. at 6 and Ex. 11).

Plaintiff alleges that, upon his arrival at MOCC, he was placed in lockdown, where he struggled to walk and dress himself, and that he could not get his food trays on his own, but eventually another inmate was able to assist him.  Plaintiff further alleges that the pain medication that he was given (which he referred to as

"Talwain") made him feel sick and "drugged out," so he refused to take it.  Plaintiff further alleges that he was sent to physical therapy, but could not walk with any stability, and was told that he should have been sent to a pain clinic for injections prior to starting physical therapy.  (Id. at 6-7).

According to the Complaint and attached documents, on May 14, 2007, Plaintiff was sent to see Dr. Ramesh for a consultation regarding pain injections.  (Id. at 7 and Ex. 12).  On July 31, 2007, Plaintiff was returned to Dr. Ramesh for pain injections. (Id.) Plaintiff alleges that the injections returned some feeling and movement in his left leg.  (Id.) Plaintiff's Complaint further indicates that he received more pain injections in October of 2007 and March of 2008.  (Id. at 7-8).  Plaintiff alleges that Dr. Ramesh suggested another round of injections be done, and that another MRI be performed, both of which Plaintiff alleges did not occur.  (Id. at 8).

Plaintiff further alleges that he was denied medication. According to the Complaint and attached documentation, on June 21, 2007, CMS personnel determined that Plaintiff was refusing his medications because he could not bend down to pick them up off of the floor, and correctional officers would not open the door to give him his medication.  Plaintiff states that CMS made him sign a release of responsibility.  (Id. at 7 and Ex. 5).  Plaintiff further alleges that the medication that he was given, Motrin and

Baclofen, made him sick and was not helpful. (<u>Id.</u> at 7).

Plaintiff filed several grievances concerning not receiving his

requested medication, not being able to walk with a cane, and not

receiving physical therapy. (<u>Id.</u> and Ex. 6). Plaintiff states

that he was told that his medication was discontinued because he

was non-compliant with taking it. (<u>Id.</u>)

Plaintiff further alleges that, during this time, he developed

urinary tract problems, which worsened. Plaintiff states that Dr.

Obenza prescribed medication that restricted Plaintiff's urinary

flow and actually caused greater pain. He further alleges that,

although Dr. Obenza did a PSA test and took urine samples, he

failed to diagnose Plaintiff's symptoms, and placed Plaintiff on an

alpha blocker, which affected his blood pressure and made him

dizzy. (<u>Id.</u> at 8).

Plaintiff's Complaint further states:

> Plaintiff has been allowed to suffer for months
> having continuous back, leg, hip and urinary pain. Dr.
> Obenza['s] last examination was sometime in September,
> and indicated that the order for Celebrex was good for
> 180 days. Dr. Obenza insisted on prescribing Baclofen
> again, because there are no other medications that he
> could try that are on the formulary for muscle spasms.
> There is nothing else that he could do for the urinary
> problems because he had exhausted the formulary list of
> medications for urinary problems, and I could still
> urinate. Plaintiff indicated that his urination was not
> normal. Dr. Obenza said, "I did not say it was normal.
> I will see about getting a referral for [your] back
> pain." Dr. Obenza walked out of the room.

(<u>Id.</u> at 8-9).

Wexford Health Sources took over the inmate health care contract at MOCC on May 1, 2008. Plaintiff's Complaint alleges that Dr. Ramesh had prescribed Lortab for Plaintiff. However, when Wexford took over the health care contract, Dr. Obenza apparently discontinued the Lortab because he was worried about Plaintiff developing an addiction to it, and Plaintiff had claimed it was ineffective. (Id. at 11). Plaintiff further alleges that, when Plaintiff asked why other treatments had not been used and other non-narcotic medication was not being used to treat his pain, Dr. Obenza stated that "noone will approve payment for it. It costs too much." (Id.)

On August 11, 2008, a wheelchair was ordered for Plaintiff. (# 1, Ex. 9). According to Exhibit 1 attached to the Complaint, Plaintiff filed a grievance on October 13, 2008, complaining that medical personnel had not addressed the worsening conditions of his back, hip and leg pain and spasms and his urinary problems. The grievance further complained about receiving medication that was not helpful or made him sick, and that other medications were not being re-ordered. Finally, Plaintiff complained about not being referred to specialists. (Id., Ex. 1). On October 15, 2008, Unit Manager Janet Payne responded to the grievance stating "Your meds are ordered and you will be referred to the current doctor for evaluation and referrals." (Id.) On November 6, 2008, Paul Lyttle, the Acting Warden, granted this grievance as specified,

12

stating that "Only the physician/designee has the authority to prescribe medication. If you have questions or concerns regarding certain medications, submit an Inmate Health Care Request form to the medical department so they can be discussed and addressed." (Id.) On November 24, 2008, Charlene Sotak affirmed the request on behalf of the Commissioner. (Id.)

Plaintiff's Complaint further alleges that he was seen by a Physician's Assistant on October 27, 2008, who allegedly indicated that Plaintiff's medication was not going to be re-ordered and that no referrals had been made on his behalf. (# 1 at 9). However, the Physician's Assistant allegedly stated that she would copy Plaintiff's medical records and send them to be reviewed for a referral. (Id.)

Plaintiff's Complaint generally alleges that both CMS and Wexford refused to buy certain medications because of cost, and that both had a pattern of not ordering refills of his medications in a timely fashion, as a cost-saving measure. Plaintiff further alleges that there is a continual pattern of failure to adequately address the same medical problems, which demonstrates that there is no adequate treatment plan, which should be tracked by the various health care practitioners who have treated him, who, he further alleges, will not take the time to review his history. (Id. at 12-13).

Plaintiff further alleges that "[b]oth CMS and Wexford's indifference to performing their duties in providing appropriate medications and treatments for this plaintiff has caused significant harm to this Plaintiff." (Id. at 13). Plaintiff asserts that he is "no longer ambulatory as a result of no treatment," has lost motor function in his left leg, cannot sleep and is in a "chronic state of pain." Plaintiff further states that he "believes that these defendants have caused greater injury to this Plaintiff by being deliberately indifferent to their obligated duties to treat the real diagnosed medical needs of this Plaintiff for increased profits for their companies." (Id. at 14).

Plaintiff further asserts that the DOC Defendants were aware of his sufficiently serious medical needs because he filed grievances, and because Dr. Obenza had completed the paperwork to place Plaintiff on old and infirm status, due to disability. (Id. at 17). Plaintiff further alleges that the outside medical providers that he has been sent to were "hand picked to deny treatments" for which the DOC did not want to have to transport Plaintiff. (Id. at 15).

Plaintiff's Complaint seeks declaratory, injunctive and compensatory relief. Before addressing the merits of Plaintiff's deliberate indifference claims, the undersigned notes that, to the extent that Plaintiff has alleged claims against Wexford Health Sources, and its employees, those claims only concern Plaintiff's

14

treatment since May 1, 2008, when Wexford took over the contract to provide medical services to inmates at MOCC.  Furthermore, to the extent that Plaintiff's Complaint contains factual allegations that pre-date May 1, 2008, those claims are only against CMS and its employees.  Moreover, any allegations about events that occurred prior to September 23, 2007 are likely barred by the two-year statute of limitations applicable to section 1983 claims.[1]  Finally, since the filing of Plaintiff's Complaint, Plaintiff has been released on parole.  Accordingly, Plaintiff's requests for injunctive relief are now moot.

### CMS, Dr. Mark Allen and Mary Westfall

CMS was the health care provider at MOCC from April of 2007, when Plaintiff's allegations in his Complaint begin, through April 30, 2008.  According to the Complaint, Dr. Mark Allen was the Regional Director for CMS during this time, and Mary Westfall was the Health Services Administrator for CMS at MOCC.  Although the Complaint itself does not make specific allegations against Dr. Allen and Ms. Westfall, Plaintiff has attached affidavits concerning the conduct of each of these defendants, which allege in pertinent part as follows:

Plaintiff alleges that Dr. Allen delayed or denied needed medical treatments, referrals to specialists and ordering of non-

---

[1]  Plaintiff's original Complaint was filed on September 23, 2009.  (# 1).

15

formulary medications.  Plaintiff further alleges that Dr. Allen did not adequately supervise Dr. Obenza, and allowed Dr. Obenza's failure to complete paperwork to obtain needed medications and referrals to specialists.  Plaintiff further alleges that Dr. Allen cancelled appointments with specialists or allowed others to do so. Finally, Plaintiff alleges that Dr. Allen did not properly address Plaintiff's urinary problems or his need for physical therapy. (Ex. 16, # 1-2 at 27-28).

Plaintiff's allegations against Mary Westfall are largely repetitive of those against Dr. Allen.  Plaintiff alleges that Mary Westfall, in concert with Dr. Obenza and/or Dr. Allen, delayed or denied Plaintiff needed medical treatment, referrals to specialists, and ordering of non-formulary medication.  Plaintiff further alleges that Ms. Westfall did not adequately perform administrative duties or supervision and permitted or ignored Dr. Obenza's failure to complete paperwork to obtain medication and referrals to specialists.  Plaintiff specifically alleges that Ms. Westfall failed to address Dr. Allen's cancellation of the medications Celebrex and Tagament; however, Plaintiff acknowledges that both drugs were re-ordered after some delay.   Finally, Plaintiff alleges that Ms. Westfall ignored or never addressed the fact that certain medications which caused side effects were repeatedly given to Plaintiff, and that other medications that were ineffective were also repeatedly re-ordered for him.  (Id. at 29-

16

30).

The Memorandum in Support of the CMS Defendants' Motion to Dismiss asserts that the Complaint and its exhibits clearly demonstrate that Plaintiff has actually received abundant medical care. Describing the Plaintiff's allegations beginning around the time he was transferred to MOCC, the CMS Memorandum argues that medications were only discontinued when Plaintiff was non-compliant about taking them and that, by Plaintiff's own description, he received an MRI test, treatment at neurological and pain clinics, physical therapy, medications, had multiple visits with prison medical staff, and was issued a cane and a wheelchair to assist his mobility. (# 40 at 6-7). The CMS Defendants further assert:

> While it is clear that this plaintiff prefers to select his own medications, there can be no doubt that medication was always offered to the plaintiff. Medication was only discontinued after plaintiff was noncompliant and refused to take the medication provided to him. Obviously, an inmate cannot be given medications if he refuses to take them as those medications may be improperly passed on to other prisoners.
>
> * * *
>
> The Affidavit of the plaintiff regarding Dr. Allen makes claims that are refuted or ignored by the Complaint. For example, the Complaint makes no allegation that Dr. Allen delayed or denied needed medical treatments, referrals to specialist care and the ordering of needed non-formulary medications. The Complaint fully develops the fact that this plaintiff was repeatedly sent outside the prison for care by specialists in neurology and pain management. Plaintiff's Complaint indicates on page 9 that he filed a grievance regarding referrals and formulary medications on October 13, 2008. That is the first reference in the Complaint to plaintiff's issue regarding formulary

17

medications and it came six (6) months after CMS stopped service in West Virginia on April 30, 2008.

The plaintiff makes very general, nonspecific claims about CMS and nonformulary medications. There is no claim that Dr. Allen ever had any specific knowledge of any medication regarding this plaintiff. The Complaint fails to state a claim against Dr. Allen for deliberate indifference.

Similarly, the Complaint is completely silent as to any substantive allegation against Mary Westfall. The Affidavit contains boiler plate allegations against Ms. Westfall which are essentially identical to those made against Dr. Allen. There is, again, no claim that Mary Westfall ever had any specific knowledge of this defendant. There is no allegation which shows the necessary degree of wantonness regarding this plaintiff. There is no claim that Ms. Westfall had the power or the desire to deny any medical care to the plaintiff. The undisputed evidence in this case is that this plaintiff was repeatedly seen and treated by specialists outside the prison.

Plaintiff mistakenly claims that Ms. Westfall did not advocate the "real medical needs of this Plaintiff when Dr. Iglecia has ignored the need for specialist care appointments . . . ." Dr. Iglecia is a Wexford employee and Ms. Westfall was no longer employed at [MOCC] when Dr. Iglecia treated the plaintiff.

The undisputed facts show that this plaintiff had an MRI, multiple consultations with specialists, treatment including injections to reduce spinal pain, was housed in the infirmary and received consistent and appropriate care including medications, and was provided canes and wheelchairs.

(Id. at 7-8).

Plaintiff's Response to the CMS Defendants' Motion to Dismiss largely repeats the allegations made in his Complaint documents, arguing that the "facts" as alleged in the Complaint and affidavits attached thereto sufficiently state claims of deliberate

indifference against these defendants, with regard to delaying or denying medication, delaying or denying referrals to specialists, and making medical judgments based upon financial reasons, rather than medical necessity. (# 43). Therefore, Plaintiff argues that his claims should not be dismissed.

The undersigned proposes that the presiding District Judge **FIND** that, disregarding the conclusory allegations and legal conclusions, pursuant to <u>Twombly</u> and <u>Iqbal</u>, and taking the facts alleged in Plaintiff's Complaint and accompanying documents as true, the allegations concerning Plaintiff's medical treatment by the CMS Defendants fail to rise to the level of deliberate indifference to a serious medical need. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim upon which relief may be granted against defendants CMS, Dr. Mark Allen and Mary Westfall.

<u>Wexford Health Sources and Naomi Roberts</u>

The undersigned will now turn to the Wexford Defendants' Motion to Dismiss (# 35). The motion first asserts that there are no specific allegations against defendant Naomi Roberts, Wexford's Health Services Administrator at MOCC. The Wexford Defendants note that there is an Affidavit contained as part of Exhibit 16 to Plaintiff's Complaint, which does address conduct by Naomi Roberts. However the Wexford Defendants' Memorandum states:

19

In any event, the affidavit simply contains conclusory statements, hearsay statements and self serving declarations by the plaintiff.  It should be further noted that the only date in the affidavit is March, 2008, when it is alleged in the affidavit that defendant Roberts interfered with medications and alleged referrals to specialists.  It should be noted that Wexford assumed the responsibility for the medical care at [MOCC] pursuant to a contract with the State of West Virginia effective May 1, 2008.  Obviously, defendant Roberts as Wexford Administrator as she is named in the style of the case, could not have engaged in any of the alleged conduct set forth in the affidavit since it occurred prior to May 1, 2008.

(# 36 at 2).

The Wexford Defendants further contend that Plaintiff's allegations fail to meet the standard necessary to show a deprivation of his rights under the Eighth Amendment.  Wexford argues that Plaintiff's allegations, at most, demonstrate a disagreement between Plaintiff and his medical providers about Plaintiff's medical condition and treatment.  Their Memorandum further states:

Although a good portion of the Complaint concerns treatment before Wexford assumed responsibility for medical care subsequent to May 1, 2008, those allegations and statements in the Complaint are illustrative of the care that plaintiff received while a prisoner.  When stripped of the hyperbole, opinions and self-serving characterizations, the Complaint clearly shows that the plaintiff has received adequate medical care.  There certainly is no pattern of deliberate indifference.

(# 36 at 4).  The Memorandum then summarizes the allegations in Plaintiff's Complaint, and asserts that Plaintiff's allegations actually demonstrate that Plaintiff has received adequate care for his condition, and that his medical needs have not been ignored by

Wexford or any of its employees.   (Id. at 4-9).

Plaintiff's Response to the Wexford Defendants' Motion to Dismiss asserts that he has sufficiently alleged deliberate indifference claims against each of the defendants, including Naomi Roberts, when the allegations contained in his affidavits are also considered.   Plaintiff further alleges that Ms. Roberts was working at MOCC as Health Administrator under CMS as well.   (# 38). Plaintiff asserts that the following factual allegations support his claim of deliberate indifference against the Wexford Defendants: delay and denial of access to medical attention, denial of specialized care or expertise through the cancellation of appointments, the failure to provide physical therapy, as ordered, and the failure to conduct diagnostic tests, the failure to return Plaintiff for follow-up care of his worsening conditions, the failure to read his medical history and the making of medical judgments concerning treatment based upon non-medical factors, i.e., financial costs. (Id. at 2-3).   Plaintiff asserts that his sick call slips and grievances support these claims.

Plaintiff's affidavit concerning the conduct of Naomi Roberts alleges that Ms. Roberts, in conjunction with Dr. Obenza and/or Dr. Iglecia, delayed or denied medications, treatments, and referrals to specialists, that she failed to provide adequate supervision of Plaintiff's care and allowed Dr. Obenza's failure to complete paperwork for needed medication and referrals to specialists.   The

21

affidavit further alleges that Ms. Roberts, in concert with Dr. Iglecia, denied the ordering of non-formulary medication and referrals to outside specialists, and that Ms. Roberts failed to address Dr. Iglecia's cancellation of Celebrex and Tagament and allowed the ordering of medications that caused severe side effects. (Ex. 16, # 1-2 at 35-36). As noted by the Wexford Defendants' Memorandum, the only date cited in the affidavit is March of 2008, at which time CMS was still the medical provider at MOCC. However, Plaintiff asserts that Ms. Roberts worked for CMS at MOCC at that time.

The undersigned proposes that the presiding District Judge **FIND** that the facts alleged in Plaintiff's Complaint concerning the medical treatment Plaintiff has received by defendants Wexford and Roberts fail to rise to the level of deliberate indifference to a serious medical need.

<u>Defendants Iglecia and Obenza</u>

Neither Dr. Iglecia nor Dr. Obenza have been properly served with process in this matter. Dr. Obenza is deceased; thus, service of process was not attempted. Although a summons was mailed by certified mail, return receipt requested, to Dr. Iglecia's attention at the corporate address for Wexford in Pittsburgh, Pennsylvania, and a Donald Griffin signed for the certified mail on December 4, 2009, another copy of the summons was subsequently returned on December 24, 2009, with a notation that Dr. Iglecia was

no longer employed by Wexford Health Sources, Inc., and that service of process could not be accepted on his behalf. (# 32). Accordingly, no notice of appearance has been made on Dr. Iglecia's behalf. Nevertheless, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim upon which relief can be granted against both Dr. Obenza and Dr. Iglecia.

Plaintiff's affidavit concerning Dr. Obenza's conduct alleges that he allowed or delayed needed treatment, referrals to specialists and the ordering of needed non-formulary medications. The affidavit further alleges that Dr. Obenza did not complete paperwork for referrals and for medications, which delayed needed medications for up to four to six months. Plaintiff further alleges that his pain management appointments were delayed for up to nine months, and that pain injection appointments were cancelled for no known reason. (Ex. 16, # 1-2 at 31-32).

Plaintiff further alleges that Dr. Obenza did not adequately address his urinary problems and did not refer him to a urologist or use proper medications to treat the urinary problems. Plaintiff further alleges that Dr. Obenza gave him medication that further restricted his urinary flow and caused him greater pain. Plaintiff further alleges that Dr. Obenza gave him Benadryl to help him sleep and then later denied it to him. Plaintiff further alleges that Dr. Obenza increased dosages of medications for muscle spasms that

were ineffective. Finally, Plaintiff alleges that Dr. Obenza made specific statements that both CMS and Wexford did not want to pay for non-formulary medications. (Id.)

Plaintiff's affidavit concerning Dr. Iglecia's conduct alleges that Dr. Iglecia delayed or denied needed treatments, referrals to specialists and needed medications. The affidavit further alleges that Dr. Iglecia did not adequately supervise Dr. Obenza and that he cancelled Plaintiff's appointments and denied Plaintiff non-formulary medications and referrals to specialists. Specifically, the affidavit alleges that Dr. Obenza said that he had made new referrals for Plaintiff to receive pain injections and see a specialist about Plaintiff's urinary problems, and that he had re-ordered a 180-day supply of Celebrex and Tagament for Plaintiff, but Dr. Iglecia cancelled the medications. The same affidavit states that someone else said that Dr. Obenza never completed the paperwork for these medications and referrals. (Ex. 16, # 1-2 at 33-34).

The undersigned proposes that the presiding District Judge **FIND** that the facts alleged in Plaintiff's Complaint concerning the medical treatment Plaintiff has received by defendants Obenza and Iglecia fail to rise to the level of deliberate indifference to a serious medical need.

The DOC Defendants

Plaintiff has also asserted that defendants Ballard, Rubenstein and Sotak ("the DOC Defendants") have exhibited deliberate indifference to his serious medical needs by denying his grievances concerning his medical treatment, despite being fully aware that Plaintiff had allegedly been denied appropriate medication, treatments, and referrals to specialists. (# 1 at 15-18, and Ex. 16, # 1-2 at 21-26). The DOC Defendants have addressed these claims in their own Motion to Dismiss. (# 44).[2]

The DOC Defendants contend that, to the extent that they have been sued in their official capacities, they are immune from suit under the Eleventh Amendment, and that to the extent that they have been sued in their individual capacities, they are entitled to qualified immunity on Plaintiff's claims for monetary damages against them. The DOC Defendants further assert that Plaintiff's Complaint fails to state a cognizable Eighth Amendment claim.

The DOC Defendants' Memorandum of Law in support of their Motion to Dismiss addresses the immunity from monetary damages provided to state agencies and their officials under the Eleventh

_____

[2]   The undersigned notes that the DOC Defendants' Motion and Memorandum address both Plaintiff's Complaint and his Supplement. As noted previously, this court lacks jurisdiction over the allegations made in the Supplement because it concerns Plaintiff's medical care at SMCC, which is in the Northern District of West Virginia.  Accordingly, the undersigned will only address the allegations against the DOC Defendants contained in the original Complaint.

Amendment to the United States Constitution.  <u>See</u> <u>Will v. Michigan</u> <u>Dep't of State Police</u>, 491 U.S. 58, 66 (1989); <u>Pennhurst State</u> <u>School & Hosp. v. Halderman</u>, 465 U.S. 89 (1984).  (# 45 at 8-12). Under this authority, the DOC and its agents and employees in their official capacity are immune from monetary damages.  Thus, to the extent that Plaintiff has sued the DOC Defendants in their officials capacities, they are immune from monetary damages. Furthermore, as noted above, the court cannot order Plaintiff's requested injunctive relief against these defendants, even if he were to succeed with his claims against them, because he is no longer incarcerated.

To the extent that Plaintiff has sued these defendants in their individual capacities, public officials are also not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known.  <u>See</u> <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999).  Qualified immunity exists to protect officers in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." <u>Doe v.</u> <u>Broderick</u>, 225 F.3d 440, 446 (4th Cir. 2000).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"

Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the allegations do not give rise to a constitutional violation, no further inquiry is necessary.  Id.  If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case.  Id.

It is well-settled that prison officials are entitled to rely upon the professional judgment of trained medical personnel. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990); Shakka v. Smith, 71 F,3d 162, 167 (4th Cir. 1995).  Thus, to establish a claim of deliberate indifference against non-medical prison personnel, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, or that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct.  Miltier, 896 F.2d at 853.

The DOC Defendants' Memorandum further states:

> In the present case, the plaintiff's allegations do
> not rise to the level necessary to advance a claim
> against these defendants, namely Commissioner Rubenstein,
> Inmate Grievance Coordinator Sotak, and Warden Ballard.
> First, the thought process of these defendants is totally
> transparent.   These defendants were relying on the
> medical judgments of the health care professionals whom
> Plaintiff had seen at the prisons and outside of the
> correctional facilities too.   See Grievance Responses
> contained within Exhibit 1 to the Original Complaint.
> Second, it is also clear from Plaintiff's own statement
> of the case in his Original [] Complaint[] that the
> treatment provided was not "so grossly incompetent,
> inadequate or excessive to shock the conscience or to be
> intolerable to fundamental fairness."  Miltier, 896 F.2d
> at 851.  Plaintiff is being provided access to health

27

care providers.  These defendants cannot be charged with
second guessing the clinical decisions of the treatment
providers.

(# 45 at 16-17).

The DOC Defendants further assert that Plaintiff's claims
against them appear to be wholly supervisory in nature, and that
Plaintiff cannot rely upon the doctrine of <u>respondeat</u> <u>superior</u> to
hold these defendants liable.  <u>See</u> <u>Monell</u>, 436 U.S. at 694.  (<u>Id.</u>
at 18).  They further state:

> These are not defendants who can simply chose to accept
> an inmate's desired course of treatment over that of a
> physician.   None  of  these  defendants  may  practice
> medicine.  Thus, they cannot be expected to countermand
> a physician's orders, whether right or wrong.  Although
> the Division of Corrections is no longer obligated to
> strictly   adhere   to   the   <u>Minimum   Standards   for</u>
> <u>Construction, Operation and Maintenance of Correctional</u>
> <u>Facilities</u>, 95 C.S.R. ser. 2, by virtue of W. Va. Code §
> 31-20-9 (1998), the rules do provide insight as to the
> limited role of the warden and commissioner with respect
> to health care decisions.  Under the rule, non-medical
> staff can "have no role in authorization of medical
> care."  See 95 C.S.R. ser. 2 § 14.5.  As the rule also
> states, "medical  .  .  .  matters  involving  clinical
> judgments  are  the  *sole*  province  of  the  responsible
> physician . . . ."  <u>Id.</u> § 14.2 (emphasis added).  Most
> importantly, "medical decisions shall be made *only* by the
> responsible physician or his designee(s)."  <u>Id.</u> § 14.5
> (emphasis added).  Consequently, the plaintiff has not
> set  forth  a  sufficient  exception  to  the  prohibition
> against supervisory liability.

(<u>Id.</u> at 19).

Plaintiff's Response to the DOC Defendants' Motion to Dismiss
takes issue with defense counsel's summarization of some of the
facts as stated in Plaintiff's Complaint.  The undersigned will not
spend time addressing the dispute between Plaintiff and defense

counsel concerning the characterization of the facts, as the facts as written in the Complaint, and as supported by the documents attached thereto, all of which have been reviewed by this court, will be taken as true.

Plaintiff's Response further argues that the DOC Defendants are supervisors of the medical staff and that they failed to supervise and control the conduct of their subordinates. Citing Orpiano v. Johnson, 632 F.2d 1096, 1101 (4th Cir. 1980) and McCoy v. McCoy, 528 F. Supp. 712, 714 (N.D. W. Va. 1981), Plaintiff argues that the DOC Defendants had both actual and constructive knowledge that the medical personnel were engaging in conduct that posed an unreasonable risk of harm to Plaintiff. Plaintiff further argues that DOC policy requires the Health Services Administrator to provide written reports concerning refusal of treatments, including cancellation or changing of appointments with off-site specialists, and, thus, if the medical providers were following policy, the named DOC Defendants should have been aware that Plaintiff was being denied medications, treatments, and off-site referrals, or that such medications, treatments and referrals were being delayed. (# 46 at 5-13).

Plaintiff's Response further asserts:

> This claim is [] by no means a disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment. It is about being delayed or denied the obviously needed treatment as identified by various medical and prison staff. It is about doctors and physician assistants telling me that I

need various treatments and medications that are unlikely
to be provided because of financial concerns.  There is
also the issue of the fraudulent attempt to make it
appear that some type of physical therapy was being done
when it was not under the supervision of these defendants
listed here. * * *

    Additionally, James Rubenstein, Cheryl Sotak and
David Ballard are the WV DOC supervisors of all of the
defendants who personally deprived this Plaintiff of his
civil rights.  Plaintiff is solely dependent upon these
supervisors' affirmative actions to prevent any
particular constitutional injury.  These defendants
ha[ve] failed to supervise and control the subordinates
who personally deprived him of his civil rights.  These
defendants are the ones that handle[] the Grievance
Procedures that control[] the subordinates, and these
defendants are the ones that medical reports according to
DOC Policy are being made on all of this plaintiff's
medical issues or problems getting treatments.  (As
reflected in Attachment 1 and Attachment 2.)

(Id. at 15-16)(emphasis in original).

    The DOC Defendants filed a Reply which states in pertinent

part:

    Plaintiff sets forth two ways that Defendants
Rubenstein, Sotak, and Ballard are supposed to have
gained actual or constructive knowledge of his situation.
First, "these defendants are the ones that handle[] the
Grievance Procedures that control[] subordinates." Pl.'s
Resp. at 5.  Second, Division of Corrections policies
suggest that these Defendants are the ones to whom all of
the reports are made regarding Plaintiff's medical issues
or problems getting treatments.  Id.

                        * * *

    Plaintiff attached two documents to his Response to
Defendants' Motion to Dismiss.  Despite Plaintiff's
inferences, Attachment 1 does not show that Commissioner
Rubenstein, Grievance Coordinator Sotak, or Warden
Ballard received written reports regarding the specific
provision of medical care to Plaintiff Boyd Gilmore.
Attachment 2 does not say that the Warden is the
"supervisor" of medical personnel but that he is the

                            30

"client" of Correctional Medical Services.

* * *

Plaintiff alleges that these Division of Corrections Defendants were aware that medical providers delayed or denied him medications, denied him specialized medical care or expertise, failed to take or read his medical history or conduct tests, and made judgments about his treatment based on non-medical factors like its financial cost. Pl.'s Resp. at 8-10. He then cites <u>Hamilton v. Endall</u>, 981 F.2d 1063, 1066-67 (9th Cir. 1992) for the proposition that a prison officials' disregard of a recommendation for treatment by the medical personnel could constitute deliberate indifference. <u>Id.</u> at 10. This case is inapplicable to the instant matter, in that Defendants Rubenstein, Sotak and Ballard have not disregarded recommendations of medical professionals, but have, at most, refused to override the recommendations and provision of services by those treating Boyd Gilmore. A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between an inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985). The Fourth Circuit has defined "deliberate indifference" in medical claims as treatment "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990).

Whether or not a patient should undergo the next stage of treatment is a medical judgment that only physicians are qualified, by education and experience, to provide. "Questions of medical judgments are not subject to judicial review." <u>Russell v. Shaffer</u>, 528 F.2d 318, 319 (4th Cir. 1975)(per curiam)(citing <u>Shields v. Kunkel</u>, 442 F.2d 409 (9th Cir. 1971). The Division of Corrections Defendants, who are not trained in medical sciences, also cannot make a decision independent of the medical professionals in matters relating to inmate health. It would be an unprecedented extension of the theory of supervisory liability to charge the supervisors, not only with ensuring that Plaintiff received prompt and unfettered medical care, but also with ensuring that their subordinates employed proper medical procedures, which takes years to learn and master. <u>Miltier v. Beorn</u>, 896 F.2d 848, 854 (4th Cir.

> 1990).  There is no reason why the Supervisory Defendants
> should not be entitled to rely upon the expertise if the
> health care providers.  <u>Id.</u>

(# 47 at 5-8).

Plaintiff has alleged nothing more than the fact that the DOC Defendants were made aware of his medical issues through the grievance process, and failed to take any action.  Because Plaintiff has not sufficiently alleged deliberate indifference claims against the medical providers who treated him, he cannot sufficiently allege deliberate indifference claims against the DOC Defendants, who were entitled to rely upon the professional medical judgment of the health care providers when reviewing Plaintiff's grievances concerning Plaintiff's treatment.  Accordingly, the undersigned proposes that the DOC Defendants should be accorded qualified immunity on Plaintiff's claims against them.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim against defendants Ballard, Rubenstein and Sotak, concerning their conduct surrounding Plaintiff's medical care.

<u>**RECOMMENDATION**</u>

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by Wexford Health Sources and Naomi Roberts (# 35), **GRANT** the Motion to Dismiss filed by Correctional Medical Services, Inc., Dr. Mark Allen and Mary Westfall (# 39), and **GRANT** the Motion to

Dismiss filed by David Ballard, Jim Rubenstein and Charlene Sotak
(# 44). It is further respectfully **RECOMMENDED** that the presiding
District Judge **DISMISS** the Plaintiff's Complaint against defendants
Dr. Ebenezer Obenza and Dr. Ray Iglecia for failure to state a
claim upon which relief may be granted. It is further respectfully
**RECOMMENDED** that the presiding District Judge enter a Judgment
Order dismissing the above-named defendants and, by further Order,
transferring the Supplemental Complaint in this matter to the
United States District Court for the Northern District of West
Virginia for further action against the defendants named in the
Supplemental Complaint.

The parties are notified that this Proposed Findings and
Recommendation is hereby **FILED**, and a copy will be submitted to the
Honorable John T. Copenhaver, Jr., United States District Judge.
Pursuant to the provisions of Title 28, United States Code, Section
636(b)(1)(B), the Rules 6(d) and 72(b), Federal Rules of Civil
Procedure, the parties shall have fourteen days (filing of
objections), and then three days (service/mailing), from the date
of filing this Proposed Findings and Recommendation within which to
file with the Clerk of this court, specific written objections,
identifying the portions of the Proposed Findings and
Recommendation to which objection is made, and the basis of such
objection. Extension of this time period may be granted by the
presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Synder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and counsel of record.

July 15, 2010
        Date

Mary E. Stanley
Mary E. Stanley
United States Magistrate Judge

34